UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: ) | | CHAPTER 11 |
| ) | | |
| BEAULIEU GROUP, LLC, et al., ) | | Jointly Administered Under |
| ) | | CASE NO. 17-41677-bem |
| Debtors. ) | | |
| ) | | |
| ) | | |
| PMCM 2, LLC, as the Liquidating Trustee ) | | |
| for the Beaulieu Liquidating Trust ) | | |
| ) | | ADV. NO. 19-04036 |
| Plaintiff, ) | | |
| v. ) | | |
| ) | | |
| FABRIC SOURCES, INC. AND FABRIC ) | | |
| SOURCES INTERNATIONAL, LLC, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

**DEFENDANT FABRIC SOURCES INTERNATIONAL, LLC'S
REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant Fabric Sources International, LLC ("Defendant" or "Fabric Sources") submits this Reply Brief in Support of its Motion for Partial Summary Judgment in response to the Trustee's *Response in Opposition to Defendant Fabric Sources, LLC's Motion for Partial Summary Judgment* ("Trustee's Response") (Doc. No. 31) and *Statement of Material Facts as to Which the Plaintiff Contends a Genuine Issues Exists to be Tried* ("Trustee's SOF") (Doc. No. 32) and states as follows:

INTRODUCTION

There are no materially disputed facts in this matter. Rather, the core legal issue for this Court is whether a creditor who has an allowed but unpaid 11 U.S.C. § 503(b)(9) claim against the estate may avail itself of the 11 U.S.C. § 547(c)(4) statutory defense to an alleged preferential

HB: 4820-8324-0369.3

transfer by the Debtor which the Trustee seeks to avoid. The answer to that question is an unequivocal "Yes". Viewed in its entirety, the plain language of § 547 is wholly backward looking at pre-petition transfers. Conversely, it does not take into account post-petition transactions. The Eleventh Circuit's *BFW* decision plainly adopted this approach which encourages creditors to deal with financially troubled debtors before bankruptcy. In short, Fabric Sources is entitled to its *Motion for Partial Summary Judgment* (the "Motion") (Doc. No. 22).

## ARGUMENT

### I.     There are no Materially Disputed Facts.

On a summary judgment motion after the moving party has met this initial burden, the non-moving party has the burden of presenting specific facts that raise a genuine issue for trial.[1] Unsupported conclusory allegations do not create a genuine issue of fact.[2] To withstand summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' "[3] In this case, the Trustee has failed to put forth any admissible facts that create a material issue of fact to the legal issues pending before this Court.

The Trustee filed the Trustee's SOF in support of its Response.[4] Trustee's SOF does not comply with the Bankruptcy Court's Local Bankruptcy Rule ("LBR") 7056-1 which requires the Trustee to respond to each separate fact. The Trustee only responds to Fabric Source's *Statement Of Material Facts in Support of Motion for Partial Summary Judgment* [Docket No. 24] ("Fabric Sources' SOF") numbered paragraphs 10, 11, 15, 31, 32, and 33. Trustee "admits each of the allegations" not responded to in the Trustee's SOF.[5] However, in Trustee's SOF, Trustee also

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[2] *See United States v. Simons*, 129 F.3d 1386, 1388-89 (10th Cir. 1997) (citing *Allen v. Muskogee, Okla.*, 119 F.3d 837, 843-44 (10th Cir. 1997)).
[3] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986) (quoting Fed. R. Civ. P. 56(e)).
[4] *See* Fabric Sources Counterclaim [Doc # 4] and Trustee's Answer [Doc #11] to ¶4 admitting this fact.
[5] *See* Trustee's SOF [Doc # 32] to pg. 2.

admits that the allegations in numbered paragraphs 10, 11, 15, and 31 are believed to be accurate.[6] Trustee however "denies" the allegations in numbered paragraphs 10, 11 and 31 as "discovery in this Adversary Proceeding has not yet concluded and it is possible that there may have been payments made by Beaulieu that have not been determined."[7] Trustee similarly "denies" the allegations in numbered paragraph 15 as "discovery in this Adversary Proceeding has not yet concluded and it is possible ay be errors in the invoices attached to Claim No. 1413 and the § 503(b)(9) Claim."[8]  Trustee's responses simply rephrase the statement that "a party has insufficient knowledge to admit or deny."[9]  Such a response is explicitly called "not an acceptable response" in LBR 7056-1(a)(2).[10]  Trustee has not complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure. LBR 7056-1(2) explicitly prevents this denial of facts for future fishing expeditions in motions for summary judgment.[11]  Due to Trustee's failure to comply with LBR 7056-1 in its Trustee's SOF, this Court should determine that all of Fabric Source's SOF are admitted as true and accurate. Such a result is in alignment with recent opinions issued by this Court. *See, e.g., In re White*, 550 B.R. 615, 620 (Bankr. N.D. Ga. 2016) ("[f]acts not specifically controverted are deemed admitted. BLR 7056–1(a)(2)"); *In re Harrell*, 19 WL 1490430, at *1 (Bankr. N.D. Ga. Mar. 28, 2019) ("Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted.")

---

[6] *See* Trustee's SOF [Doc # 32] to ¶¶ 10, 11, 15 and 31.
[7] *See* Trustee's SOF [Doc # 32] to ¶ 10, 11, and 31.
[8] *See* Trustee's SOF [Doc # 32] to ¶ 15.
[9] *See* LBR Rule 7056-1(a)(2).
[10] *See* LBR Rule 7056-1(a)(2).
[11] As discussed *infra*, Trustee's purported denials of numbered paragraphs 10, 11, and 15 are even more egregious as Claim No. 1413 and the § 503(b)(9) Claim as *prima facia* valid and the burden is on Trustee to raise a material objection to the claims. Trustee's Response and Trustee's SOF raise serious concerns regarding why these claims objections were ever included in the Complaint.

3

The Trustee objected to Fabric Sources' Claim No. 1413[12] and Fabric Sources' § 503(b)(9) Claim, which are *prima facia* valid – even though apparently the Trustee's books and records are in complete agreement with the filed claims.  But the fact that the Trustee objects to claims does not raise a materially issue of fact—even more so when the Trustee's own books and records indicate that the claims are accurate.  In short, the Trustee has not raised any materially disputed fact for purposes of this Motion for Partial Summary Judgment.

**II.     Fabric Sources is entitled to use all of its unpaid invoices—including those entitled to priority under 11 U.S.C. § 503(b)(9)—for purposes of its subsequent new value defense under 11 U.S.C. § 547(c)(4)**

*The Trustee's Response wholly fails to address Fabric Sources' argument that the plain language of § 547 limits the "otherwise unavoidable" criteria to § 547(c) defenses.*

Despite being very lengthy, the Trustee's Response fails to put forth a comprehensive, coherent statutory construction of 11 U.S.C. § 547 and 11 U.S.C. § 503(b)(9) to support the Trustee's position that unpaid goods slated for a § 503(b)(9) payment cannot be used as part of a defendant's § 547(c)(4) defense.  Most significantly, the Trustee's Response <u>wholly fails to address</u> Fabric Sources' argument that the plain language of § 547 demonstrates that the "otherwise unavoidable" is limited to the defenses under § 547(c).  The Trustee's failure to fully address and consider all of the language of § 547 is a tacit admission and recognition by the Trustee that its position is legally incorrect.

To see why § 503(b)(9) distributions are not an "otherwise unavoidable transfer" for purposes of § 547(c)(4), this Court needs to consider § 547 as a whole rather than just myopically focusing on § 547(c)(4) as the Trustee has done.  Section § 547(b) provides that "Except as provided in subsections (c) and (i) of this section, the trustee may avoid any *transfer*

---

[12] All capitalized terms not explicitly defined herein shall have the same meaning as construed in Fabric Sources' Motion.

4

HB: 4820-8324-0369.3

of an interest of the debtor in property" if the five elements of § 547(b)(1) – (5) are met.[13] The plain language of that section mandates that the "transfer" in question must have occurred *before* the bankruptcy petition date.[14] Indeed, if the transfer occurs *after* the bankruptcy petition date then the preference claim would fail as a matter of law because an essential element of the preference action cannot be established (i.e., that the transfer occur in the 90-day or one-year period before the bankruptcy filing). Section 547(c) then sets forth the nine exceptions or defenses to transfers that are preferential under § 547(b). The lead-in language to § 547(c) is critical in this regard. Specifically, it states that "The trustee may not avoid *under this section a transfer*—."[15] The phrases "under this section" and "a transfer" are critical to understanding the § 547(c) defenses. First, the "under this section" phrase limits the avoidance of § 547 preferential transfers to the extent that any of the nine defenses set forth in § 547(c) are applicable. Second, the "a transfer" phrase begs the question: To what "transfer" is § 547(c) referring? The answer is obvious—it is referring to the transfer specifically referenced in § 547(b) that was made before the petition date. Indeed, if no "transfer" occurs for purposes of § 547(b), then there is no need to resort to the § 547(c) defenses to defend against that transfer.

The Trustee's Response completely ignores these statutory provisions and instead myopically focuses on the term "transfer" to argue that there is no temporal limitation under § 547(c)(4) and that the term "transfer" is broad enough to also include estate distributions. Trustee's Response, pp. 17-19. But the Trustee's interpretation is legally erroneous. By its own plain terms § 547 is *not* referring to *post-petition* distributions to allowed § 503(b)(9) claimants. Rather, § 547 only looks to the transfer that occurred *before* the petition date which the trustee now seeks to avoid. Thus, when § 547(c)(4) uses the phrase "otherwise unavoidable transfer" it

---

[13] 11 U.S.C. § 547(b) (emphasis added).
[14] 11 U.S.C. § 547(b)(4).
[15] 11 U.S.C. § 547(c) (emphasis added).

becomes clear that the "transfer" to which that sub-section is referring is a transfer that occurred before the petition date. By corollary, in turn, the phrase "otherwise unavoidable" refers to transfers that are otherwise unavoidable under one of the other eight statutory defenses set forth in § 547(c).[16]

Other portions of the § 547(c)(4) defense also strongly support this interpretation. For example, § 547(c)(4)(B) provides: "on account of which new value the debtor *did not make* an otherwise unavoidable transfer…" (emphasis added). Significantly, the phrase "did not make" is used in the past tense. It is looking backward in time to what the debtor previously did. Conversely, it is not looking forward in time to what the debtor might do. The past tense phrase "did not make" clearly directs the Court to look at the Debtor's prepetition dealings to see if the transfer at issue was otherwise unavoidable. In this case the answer is clear: the Debtor *did not make* an otherwise unavoidable transfer to Fabric Sources for the goods that make up its § 503(b)(9) claim. Indeed, it is undisputed in this case that (a) the Debtor never paid Fabric Sources for the value of the goods it provided in the 20-day period before bankruptcy and (b) the Trustee has not paid Fabric Sources' § 503(b)(9) claim.

In a similar vein, the "otherwise unavoidable" phrase is also used in § 547(c)(4)(A) in connection with a security interest. Similar to § 547(c)(4)(B) which uses the phrase "did not make," § 547(c)(4)(A) also uses the past tense phrase "not secured." The meaning of this is undoubtedly clear: When looking at the pre-petition transfer that the Trustee is seeking to avoid

---

[16] This interpretation is directly in line with other bankruptcy courts which have held that application of the § 547(c)(4) defense first requires an analysis whether the transfers the trustee seeks to avoid are protected by other provisions of § 547. *See e.g., In re Phoenix Rest. Group, Inc.*, 317 B.R. 491, 499–500 (Bankr. M.D. Tenn. 2004) (*citing In re George Transfer, Inc.*, 259 B.R. 89, 95 (Bankr. D. Md. 2001) ("application of § 547(c)(4) 'requires prior determination of whether the transfer is protected under *other portions* of Code § 547.'") (emphasis added); *see also In re Phoenix Rest. Group, Inc*., 301-12036, 2005 WL 114327, at *9 (Bankr. M.D. Tenn. Jan. 10, 2005) ("Until the other § 547(c) defenses are adjudicated, the temporally sensitive calculation in § 547(c)(4) cannot be performed."

HB: 4820-8324-0369.3

under § 547(b) the Court is required to ask whether the transfer in question was secured by an "otherwise unavoidable security interest" at the time of the transfer.

The consistent use of the term "transfer" in the context of § 547 to only refer to pre-petition transfers is not a surprise. The Supreme Court has long recognized that identical words are presumed to have the same meaning when used in the same statute.[17] Throughout § 547 the term "transfer" is consistently used to refer to pre-petition transfers. Indeed, the plain language of the other § 547(c) defenses specifically contemplate transfers that occurred pre-petition. Similarly, the other § 547(c) defenses consistently use past tense phrasing when referring to the "transfer" in question. Conversely, there is no reference in § 547 to post-petition distributions. Indeed, § 547's temporal limitation to pre-petition transfers is further buttressed by the fact that Congress specifically enacted another section—§ 549—to specifically address the avoidance of post-petition transfers.

If the Trustee's position were correct that the term "otherwise unavoidable transfers" encompasses post-petition transfers then, logically, one would expect that a creditor's post-petition extension of unpaid new value to the estate could be used for purposes of § 547(c)(4). But Courts have never adopted that position. Indeed, it is very well-settled that post-petition extensions of new value by a creditor cannot be defensively used for purposes of § 547(c)(4).[18]

---

[17] *See e.g., Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722–23, 198 L. Ed. 2d 177 (2017); *Robers v. United States*, 572 U.S. 639, 643, 134 S. Ct. 1854, 1857, 188 L. Ed. 2d 885 (2014); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 86, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006); *IBP, Inc. v. Alvarez,* 546 U.S. 21, 34, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).

[18] *See e.g., In re Friedman's Inc.*, 738 F.3d 547, 557 (3d Cir. 2013); *In re Bellanca Aircraft Corp.,* 850 F.2d 1275, 1284–85 (8th Cir.1988); *In re Vunovich,* 74 B.R. 629, 632 (D.Kan.1987); *In re Graves,* 2012 WL 4026811, at *2 (Bankr. M.D.N.C. Sept. 12, 2012); *In re Smith Min. and Material, LLC,* 405 B.R. 589 (Bankr.W.D.Ky.2009); *In re Rocor Int'l, Inc.,* 352 B.R. 319, 333 (Bankr.W.D.Okla.2006); *In re Phoenix Restaurant Group, Inc.,* 317 B.R. 491 (Bankr.M.D.Tenn.2004); *In re George Transfer, Inc.,* 259 B.R. 89, 96 (Bankr.D.Md.2001); *In re Schwinn Bicycle Co.*, 205 B.R. 557, 568–69 (Bankr. N.D. Ill. 1997); *In re Sharoff Food Serv., Inc.,* 179 B.R. 669, 678 (Bankr.D.Co.1995); *In re D.J. Mgmt. Grp.,* 161 B.R. 5, 6 (Bankr.W.D.N.Y.1993); *In re Jolly "N," Inc.,* 122 B.R. 897, 909–10 (Bankr.D.N.J.1991); *In re Ford,* 98 B.R. 669 (Bankr.D.Vt.1989); *In re Richards,* 92 B.R. 369, 372 (Bankr.N.D.Ind.1988); *In re Antinarelli Enter., Inc.,* 76 B.R. 247 (Bankr.D.Mass.1987); *In re Jet Florida Sys., Inc.,* 80 B.R. 544 (S.D.Fla.1987).

The reality is that the Trustee's argument that "otherwise unavoidable transfer" in § 547(c)(4)(B) is exceptionally narrow and wholly ignores the plain language of the rest of the statute.[19]  Similarly, the Trustee's reliance on the *TI Acquisition*[20] and *Circuit City*[21] decisions is misplaced because those decisions ignored the plain statutory text noted above and instead reached their decisions based on misperceived policy applications of the Bankruptcy Code.  In short, the Trustee's interpretation and application of § 547(c)(4) is just plain wrong.

***The Eleventh Circuit's BFW decision strongly supports Fabric Sources' position and effectively overrules the holding in TI Acquisition.***

The Trustee's Response claims that the Eleventh Circuit's *BFW* decision is inapplicable to this case.  Trustee's Response, p. 12.  Despite recognizing that the *TI Acquisition* decision is not binding on this Court (Trustee's Response, p. 11), the Trustee also spends a spends significant time arguing that it should be followed.  Trustee's Response, pp. 11-17.  But the Trustee's desperate resuscitation efforts cannot breathe new life into an old, lower level case that has been effectively laid to rest by a subsequent Eleventh Circuit decision.  Indeed, the Trustee's argument patently ignores key portions of the *BFW* decision which directly impact the § 547(c)(4) interpretation and which show that *TI Acquisition* is not good law.

The Trustee in *BFW* argued that "the 'otherwise' qualifier means that the avoidability of a debtor's payment cannot be derived from § 547, but instead it must come from somewhere else."[22]  But the Eleventh Circuit explicitly rejected this position specifically stating that it

---

[19] Even though the Trustee recognizes the Debtor no longer has any assets, the Trustee attempts to argue its position complies with the Bankruptcy Code because the Trustee has the ability to effectively "game the system" and transfer assets back to the Debtor who, in turn, could make a payment for the § 503(b)(9) claim.  *See* Trustee's Response, pp. 15-16.  But even if these mental gymnastics were carried out it would not change the fact that the plain language of § 547 is written in the past tense and is backward looking.  In short, the Trustee's gamesmanship argument does not refute Fabric Sources' position but rather further illustrates that there is no complete, coherent statutory interpretation of the Bankruptcy Code that would support the Trustee's position.
[20] *See* Trustee's Response, pp. 11-17.
[21] *See* Trustee's Response, pp. 13, 17 and 20.
[22] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1198 (11th Cir. 2018).

8

disagreed with the Trustee's approach which it called "illogical."[23] The Court noted that "if correct, the Trustee's argument effectively eviscerates the new-value defense."[24] The Eleventh Circuit further stated: "We read the phrase 'otherwise unavoidable transfer' in § 547(c)(4)(B) as referring to transfers that are unavoidable for reasons other than § 547(c)(4)'s subsequent-new-value defense."[25] The Court noted that there are eight other defenses under § 547(c) to preferential transfers.[26] The Court then stated that "a transfer that is rendered unavoidable by one of those other exceptions, such as § 547(c)(2)'s ordinary-course-of-business defense, can naturally be said to be 'otherwise unavoidable' for purposes of § 547(c)(4)(B)."[27] In short, the *BFW* rationale is an explicit rejection of the interpretation that the Trustee seeks in this case.

### *The BFW Policy Rationale Directly Supports Fabric Sources' Position.*

The *BFW* decision also directly bears on this case by its repeated emphasis on the policy rationale underlying § 547(c)(4). The Eleventh Circuit repeatedly stated throughout the *BFW* decision that the policy for § 547(c)(4) was to encourage creditors to deal with financially troubled entities.[28] This position is directly in line with numerous other courts (including the Third and Eighth Circuit Courts of Appeal) which have specifically noted that "the subsequent advance rule, section 547(c)(4), was not enacted to ensure equitable treatment of creditors, but rather is intended to encourage creditors to deal with troubled businesses."[29] In summing up this issue one court elegantly stated:

---

[23] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1198 (11th Cir. 2018).
[24] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1198 (11th Cir. 2018).
[25] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1198 (11th Cir. 2018).
[26] *In re BFW Liquidation, LLC,* 899 F.3d 1178, 1198 (11th Cir. 2018).
[27] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1198–1199 (11th Cir. 2018).
[28] *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1193, 1195 and 1196 (11th Cir. 2018).
[29] *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1280 (8th Cir. 1988) (emphasis added); *see also In re Friedman's Inc.*, 738 F.3d 547, 560 (3d Cir. 2013); *Matter of Kroh Bros. Dev. Co.*, 930 F.2d 648, 650–51 (8th Cir. 1991); *In re George Transfer, Inc.*, 259 B.R. 89, 96 (Bankr. D. Md. 2001); *In re Sharoff Food Serv., Inc.*, 179 B.R. 669, 678 (Bankr. D. Colo. 1995); *In re Jespersen*, 67 B.R. 415, 417 (Bankr. D.S.D. 1986); *In re Almarc Mfg., Inc.,* 62 B.R. 684, 687–88 (Bankr.N.D.Ill.1986).

HB: 4820-8324-0369.3

> To force a creditor to choose between asserting a § 503(b)(9) claim and preserving its right to assert a subsequent new value defense that includes deliveries made to the debtor within the 20 days prior to the bankruptcy filing would work a disservice on Congress' inherent policy goals when enacting 11 U.S.C. §§ 503(b)(9) and 547(c)(4). Requiring creditors to make such a choice would chill their willingness to do business with troubled entities. In addition, requiring creditors to make this choice in essence deprives sellers of goods of the benefits Congress conferred upon them when it enacted 11 U.S.C. § 503(b)(9).[30]

The Trustee's Response suggests that equality of distribution between creditors is the supreme, overriding principle at play here. Trustee's Response, p. 20. But that is simply not correct. "[C]ases ruling that post-petition payments should be counted so as to achieve 'replenishment' and 'equality' have lost sight of the real policy objectives as noted above."[31] The Bankruptcy Code treats creditors dramatically differently given the priority distribution scheme.[32] What is true, however, is that the Bankruptcy Code treats *similarly situated* creditors in an equal manner.[33]

### *Fabric Sources' position does not result in a double recovery.*

The Trustee repeatedly argues both directly and indirectly that Fabric Sources' position enables it to get a "double-recovery," "double-counting," or "double-dipping" of its new value. *See* Trustee's Response, pp. 6, 8, 9, 11, 17 and 20. But there is a major problem with the Trustee's position: It is a pejorative, sound-bite narrative that is not grounded in the Bankruptcy Code's plain language. Indeed, nowhere in the Bankruptcy Code is the term "double-recovery" used. The "double-dipping" sound bite creates a false impression as to what is really happening.

As a threshold matter there has been and will never be any "double-recovery" by Fabric Sources. Prior to the petition date Fabric Sources delivered a substantial amount of goods to the Debtor. During the 90-day period, the Debtor paid Fabric Sources for some of those goods (and

---

[30] *In re Commissary Operations, Inc.*, 421 B.R. 873, 879 (Bankr. M.D. Tenn. 2010).
[31] *In re Friedman's Inc.*, 738 F.3d 547, 560 (3d Cir. 2013).
[32] 11 U.S.C. § 507.
[33] *In re Friedman's Inc.*, 738 F.3d 547, 560 (3d Cir. 2013).

HB: 4820-8324-0369.3

the Trustee is now trying to avoid those payments as preferential transfers.) However, there was an additional $1,088,942.67 in goods provided by Fabric Sources during the 90-days before bankruptcy for which Fabric Sources was never paid and, of that amount, $160,088.92 of the goods were delivered during the 20-day period before bankruptcy. Both Fabric Sources' proof of claim and its § 503(b)(9) claim only seek payment for unpaid invoices. Those claims *do not* seek payment for invoices that were already paid by the Debtor which payments the Trustee now seeks to avoid. As such, it is simply impossible for Fabric Sources to ever obtain a "double-recovery" on its unpaid invoices.

      The fact that Fabric Sources intends to avail itself of statutory defenses under § 547(c) to prevent the Trustee from avoiding payments under § 547(b) also does not result in a double recovery for Fabric Sources. Rather, it merely allows Fabric Sources to lawfully retain the pre-petition transfer that the Debtor made to it. The fallacy of the Trustee's position is vividly illustrated by considering how the § 547(c) defenses work. For example, suppose that a debtor made a payment to a creditor on the 85th day before bankruptcy. Thereafter, on the 10th day before bankruptcy the creditor provided the debtor with additional goods for which the creditor was never paid and which goods exceed the amount of the transfer on the 85th day. Under that scenario the alleged preferential transfer is clearly defensible under § 547(c)(4). But, depending on the facts of the case, it could also be defensible under § 547(c)(2) (ordinary course) or even § 547(c)(1) (contemporaneous exchange). Regardless of which defense is used there is no "double-recovery" by the creditor. Rather, what happens is that the creditor simply retains an existing payment by use of § 547(c) defenses and simultaneously submits his claim for the unpaid goods that were delivered to the debtor pre-petition.

11

> ***There is no substantive difference between a § 503(b)(9) claim and a general unsecured claim for purposes of the § 547(c)(4) defense.***

In its Memorandum in Support of its Motion for Summary Judgment, Fabric Sources detailed the hypocrisy of the Trustee's position by noting that there is no substantive difference between § 503(b)(9) claims and general unsecured claims for purposes of the § 547(c)(4) defense. *See* Doc. No. 23, pp. 11-12. In a desperate attempt to refute this argument, the Trustee attempts to distinguish § 503(b)(9) claims from general unsecured claims by arguing that § 503(b)(9) claims get paid sooner and in full. Trustee's Response, p. 19. In effect, the Trustee is attempting to prohibit creditors from using § 547(c)(4) defense if they are expected to ultimately receive a distribution on those claims. But the Trustee's position is invalid. Courts have long held that claims against the estate for unpaid new value the creditor provided to the debtor during the preference period cannot be eliminated and/or set-off by the Trustee simply because the unpaid invoices are defensively used under § 547(c)(4).[34] There is also no indication that Congress intended § 503(b)(9) to displace § 547(c)(4) defenses. When Congress added § 503(b)(9) to the Bankruptcy Code as part of the 2005 BAPCPA amendments it amended § 547(c)(2) but it <u>did not change</u> any portion of § 547(c)(4). This fact alone strongly suggests Congressional intent that the pre-BAPCPA practice of allowing unpaid goods to be defensively used for purposes of § 547(c)(4) should not be changed based on the priority of distribution given to those claims by the Bankruptcy Code. Indeed, "when 11 U.S.C. § 503(b)(9) was added, Congress did not amend 11 U.S.C. § 547(c)(4) to include a new subsection reducing new value by the amount of any § 503(b)(9) claim. There is nothing in the plain language of 11 U.S.C. §

---

[34] *See e.g., In re Maxwell Newspapers, Inc.*, 192 B.R. 633, 640 (Bankr. S.D.N.Y. 1996); *Matter of Formed Tubes, Inc.*, 46 B.R. 645, 647 (Bankr. E.D. Mich. 1985) (There is also no merit to the trustee's contention that he may recover the preference even if the new value remains in the estate because the bank filed an unsecured claim for the new value….Since 'new value' is in effect a restoration of the preference, it follows that a creditor who extends new value not only has a defense to a preference action, but may also file a claim for the new value."); *In re Columbia Packing Co.,* 44 B.R. 613, 614–15 (Bankr.D.Mass.1984).

HB: 4820-8324-0369.3

503(b)(9) or 11 U.S.C. § 547(c)(4) that indicates any Congressional intent to offset the intended benefits that 11 U.S.C. § 503(b)(9) confers upon sellers through a reduction of available new value in defending a preference action."[35]

The absurdity of the Trustee's position is further demonstrated by considering a hypothetical bankruptcy where a creditor has both a general unsecured claim, a § 503(b)(9) claim, and is the target of an alleged preferential transfer. Further suppose that in such hypothetical case, general unsecured creditors were expected to receive a 95% distribution on their claims. Under the Trustee's position, the creditor in that case could not defensively use the unpaid goods which also make up the § 503(b)(9) for purposes of § 547(c)(4) but that creditor could defensively use the unpaid goods for § 547(c)(4). In effect, the Trustee's position would extract a windfall for the estate at the expense of § 503(b)(9) claimants who would be limited in their use of the § 547(c)(4) defense while other similarly situated defendants who just happened to deliver goods to the debtor outside the 20-day period before bankruptcy would have no similar restriction. Such a result is patently unfair and demonstrably at odds with what Congress intended.

### III. This Court Should Grant Summary Judgment on Count III and Count IV of the Complaint as Trustee Has Asserted No Factual or Legal Dispute to Claim 1413 and the 503(b)(9) Claim.

In his Response, Trustee concedes that "Claim No 1413 appears to be a valid unsecured claim and that the 503(b)(9) Claim appears to be a valid administrative expense claim".[36] Further, Trustee's SOF admits that "a review of Debtors' books and records, as well as materials provided by [Fabric Sources] indicate" the accuracy of Claim 1413 and the 503(b)(9) Claim.[37] Moreover, Trustee does not contest any of Fabric Source's substantive legal arguments in its

---

[35] *In re Commissary Operations, Inc.*, 421 B.R. 873, 879 (Bankr. M.D. Tenn. 2010).
[36] See Trustee Response [Doc # 31] § II.B, pg. 21.
[37] See Trustee's SOF [Doc # 32] to ¶¶ 10, 11, 15 and 31.

13

Motion as to why Trustee's objection to Claim 1413 and the 503(b)(9) Claim should be disposed of by summary judgment.[38] A proof of claim is *prima facia* valid on its face unless an objecting party makes a colorable challenge.[39] The Trustee has made no colorable challenge to Claim 1413. Similarly, the Trustee does not respond to Fabric Source's assertion in the Motion that an objection to an administrative claim cannot be brought pursuant to an adversary proceeding.[40]

Despite its lack of response to Fabric Sources' legal arguments, despite having over twenty-eight months to review the accuracy of the claims, and despite failing to comply with Federal Rule of Civil Procedure 56(d) to request additional discovery, Trustee still wishes the Court to deny Fabric Source's request for summary judgment on Counts III and IV so it may embark on some possible future fishing expedition to uncover unspecified facts that could lead to a future challenge to the claims because it "reserved its rights to object further" in its Complaint.[41] Of course, this Court is not required to await the completion of discovery before ruling on a motion for summary judgment.[42] Additionally, summary judgment may be appropriate when no discovery has been held.[43] When a party vaguely asserts that additional discovery is necessary, but "they do not point out the nature of what additional discovery is necessary for their claims to withstand summary judgment" …. "[that party is] not entitled to have the Court delay ruling on [movant's] converted motions for summary judgment."[44] Trustee's attempts to delay summary judgment on Counts III and IV

---

[38] See generally Trustee's Response; *see* Fabric Sources Memorandum of Law [Doc # 23] §§ 2-3, pg. 15-22.
[39] *See In re Al-Karim, Inc.,* 529 B.R. 366, 372 (Bankr. N.D. Ga. 2015).
[40] *See* Fabric Sources Memorandum of Law [Doc # 23] § 3.1, pg. 19.
[41] *See* Trustee Response [Doc # 31] § II.B, pg. 21.
[42] *Smedley v. Deutsche Bank Tr. Co. Americas*, 676 F. App'x 860, 862 (11th Cir. 2017).
[43] *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (discussing Rule 56(d)'s predecessor Rule 56(f)).
[44] *Anderson v. Dunbar Armored, Inc*., 678 F. Supp. 2d 1280, 1295 (N.D. Ga. 2009) (citing *See Wallace v. Brownell Pontiac–GMC Co., Inc.,* 703 F.2d 525, 527 (11th Cir.1983) (holding that a nonmovant seeking the protection of Rule 56(f) may not rely on vague assertions that additional discovery will produce needed but unspecified facts, rather that party must demonstrate to the Court how postponement of the ruling will enable him to rebut the

HB: 4820-8324-0369.3

with vague discovery desires, without any indication of what specific facts could be located or where, is insufficient to stall summary judgment. As has become apparent in the Trustee's pleadings, Trustee brought Counts III and IV with no legal or factual basis for objection. As such, this Court should put an end to Trustee's continued gamesmanship and allow Claim 1413 and the 503(b)(9) Claim as filed.

    **IV.    This Court Should Grant Summary Judgment on Fabric Source's on Count VIII, in Part, and Declaratory Judgment on Fabric Source's Counterclaim II as Trustee has Conceded that Cannot Use 11 U.S.C. § 502(d) to Disallow an 11 U.S.C. § 503(b)(9) Claim**.

In his Response, Trustee concedes that he cannot use § 502(d) to disallow Fabric Sources' 503(b)(9) Claim pursuant to Count VIII of the Complaint.[45] As such, he "withdraws"[46] Court VIII.[47] Fabric Sources' Counterclaim II also seeks a declaratory judgment on the identical issue, asserting that the Trustee cannot use § 502(d) to disallow Fabric Sources' 503(b)(9) Claim. As the Trustee has conceded the argument, this Court should grant summary judgment in favor of Fabric Sources as to Count VIII, in part,[48] and Counterclaim II.

---

movant's contentions) (internal quotation marks and citations omitted); *see also Robinson v. Adventist Health System,* 259 Fed. Appx. 245, 246 (11th Cir. 2007).

[45] *See* Trustee Response [Doc # 31] § II.C, pg. 22.

[46] It is not clear procedurally if Trustee can "withdraw" a complaint count in a responsive brief, so out of the abundance of caution, Fabric Source's requests that this Court dispose of Count VIII of the Complaint in its summary judgment order.

[47] *See* Trustee Response [Doc # 31] § II.C, pg. 22.

[48] Count VIII also seeks to disallow Fabric Source's Claim 1413 pursuant to § 502(d). Fabric Sources did not seek summary judgment on this discrete issue but notes that the Trustee's claim is premature. *See In re Ultimate Acquisition Partners, LP*, 2012 WL 1556098, at *3 (Bankr. D. Del. May 1, 2012) ("[a] debtor or trustee "wishing to avail itself of the benefits of section 502(d) must first obtain a judicial determination on the preference complaint") (*citing In re Lids Corp.,* 260 B.R. 680, 684 (Bankr. D. Del. 2001)); *see also In re Mountaineer Coal Co., Inc.,* 247 B.R. 633, 647 (Bankr. W.D. Va. 2000) (holding that section 502(d) "would not appear applicable unless and until a finding under one of the cited sections had been made and then the claimant had failed to comply with such ruling").

15

HB: 4820-8324-0369.3

## CONCLUSION

Based upon the foregoing, Fabric Sources requests that this Court enter partial summary judgment[49] in its favor and against Plaintiff as requested and further described in its Motion.

Dated:  January 23, 2020

>  **HUSCH BLACKWELL LLP**
>
> */s/ Caleb T. Holzaepfel*
> Christopher Collins (GA #637828)
> Caleb T. Holzaepfel (*Admitted pro hac vice*)
> 736 Georgia Avenue, Suite 300
> Chattanooga, Tennessee 37402
> Telephone:  (423) 266-5500
> Facsimile:  (423) 266-5499
> chris.collins@huschblackwell.com
> caleb.holzaepfel@huschblackwell.com
>
> Michael D. Fielding (*Admitted pro hac vice*)
> Husch Blackwell LLP
> 4801 Main Street, Suite 1000
> Kansas City, MO 64112
> Telephone:  816-983-8000
> Facsimile:  816-983-8080
> michael.fielding@huschblackwell.com
>
> ***Attorneys for Fabric Sources International, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2020, a true and correct copy of the foregoing document was filed and served via the CM/ECF system, to all parties receiving CM/ECF notices in this Chapter 11 case.

> /s/*Caleb T. Holzaepfel*
> Caleb T. Holzaepfel

---

[49] Although Fabric Sources did not move for summary judgment as to Count I and Count II of Trustee's Complaint, the parties stipulated to the dismissal of the same. *See Stipulation of Dismissal Without Prejudice to Counts I & II of Plaintiff's Complaint* (Doc. No. 21).

16